IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS,

R.D.,[1]

Plaintiff,

Vs.   No. 19-1139-SAC

ANDREW M. SAUL,
Commissioner of Social Security,

Defendant.

MEMORANDUM AND ORDER

This action seeks review of the defendant Social Security Commissioner's ("Commissioner's") final decision that denied reconsideration of the amount of the assessed overpayment and that denied the request for waiver of the overpayment. Because the procedural history to this case is more involved than most, the court offers the following as background.

In 1995, the plaintiff was found disabled due to vision problems, carpal tunnel, knee and back pain, and mental issues related to dealing with the pain. There have been times when the plaintiff's monthly benefits stopped because her earnings from part-time work exceeded the guideline for substantial gainful activity. The plaintiff wants the court to review the Commissioner's determinations as to when payments should have been stopped, how much was overpaid to her, and what disqualifies her from a waiver of any overpayment. The administrative record on appeal includes a November 2017 Summary of Social Security Payments and Benefits

---

1 The use of initials is to preserve privacy interests.

for the plaintiff. It shows the following:

--benefits due from July 1994 through September 2008
--no benefits due because of work from October 2008 through April 2010
--benefits due for May and June 2010
--no benefits due because of work for July and August 2010
--benefits due for September 2010
--no benefits due because of work for October 2010
--benefits due from November 2010 through November 2011
--no benefits due to no disability from December 2011 through October 2015
--benefits due from November 2015 through January 2016
--no benefits due to work from February 2016 through August 2016
--benefits due from September 2016 through the date of the report

ECF #9, pp. 146-151. This summary evidences the Commissioner's repeated actions to address when plaintiff's part-time wages exceeded the monthly guidelines for substantial gainful activity. This case is also complicated by the plaintiff's inconsistent and incomplete efforts at challenging the Commissioner's different determinations of overpayment.

To understand the administrative proceedings being challenged, the court goes back to the Commissioner's letter dated March 4, 2015, which states that the plaintiff's work records were under review to determine her eligibility for disability payments from November 2011 through March 2015, and that no decision had been made so the plaintiff could submit information for consideration. *Id.* at 110. This letter identified the work records under review as showing her employment with Wal-Mart from October 2007 through December of 2014. *Id.* at 111. Attached to the letter is also a Statement of "Monthly Work and Earnings-Extended Period of Eligibility" that reflects the plaintiff's monthly earnings in November of 2011 were $1027 when the monthly guideline for substantial gainful activity was $1000. *Id.* at 118.

The Commissioner followed this with a letter of decision dated March 25, 2015, that stated:

> We restarted your Social Security disability payments during your extended period of eligibility because you were no longer doing substantial work. However, because you have once again performed substantial gainful work, we have decided that you are not entitled to payments beginning November 2011.

*Id.* at 105. The letter explained that work usually will be found, "substantial if gross monthly earnings average more than the" stated guidelines. *Id.*

By letter dated May 4, 2015, the Commissioner notified the plaintiff that she had been paid "$80,208.70 too much in benefits" and this included "$65,566.30 in benefits paid for November 2011 through April 2015" when no benefits should have been paid. *Id.* at 100. Acting on requests from the plaintiff, the Commissioner reviewed the matters further. By letter dated August 31, 2016, the Commissioner found that the plaintiff was entitled to benefits for November 2011, but that she was not qualified for benefits beginning December 2011, and that the total amount of overpayment was $78,730.30. *Id.* at 90.

The plaintiff submitted a request for reconsideration dated November 3, 2016, arguing that she had been disabled since December 2011 and that her earnings did not exceed the guidelines sufficiently to disqualify her from benefits. *Id.* at 22. According to the plaintiff's brief filed in this court, the following happened:

> On November 18, 2016, Karen Lewis, the SSA representative assigned to Plaintiff's case, called Plaintiff's counsel. She urged and recommended that Plaintiff withdraw her reconsideration request so that the SSA could just work out a "waiver" since Plaintiff was clearly destitute and without funds to pay anything.

ECF# 10, p. 4. The plaintiff's brief does not support this statement with a citation to anything in the administrative record or with an affidavit or declaration.

3

The plaintiff's attorney sent a letter to the Social Security Administration ("SSA") dated January 20, 2017, stating:

> Our office hereby withdraws our Request for Reconsideration dated November 4, 2016. Instead, we are submitting the enclosed completed Request for Waiver of Overpayment Recovery or Change in Repayment form [Form SSA-632-BK]. We would like to have a personal conference so that Social Security is provided with all documentation needed or required by Social Security to fully and satisfactorily consider this waiver request.

ECF# 9 at 21. The plaintiff's brief filed in this court asserts, "counsel, however, preserved/reserved the issues pending a request that a personal conference be first held so that all matters/issues could be more fully considered and decided AFTER a personal conference with SSA was conducted." ECF# 10, pp. 4-5. The plaintiff's assertion stands without any record citation or attachment in support.

In February of 2017, the SSA indicated that the facts on file did not justify approving her request for the SSA to "waive the collection of . . . [her] overpayment of $78,730.30." ECF# 9, p. 83. The plaintiff eventually had her personal conference on September 8, 2017. *Id.* at 29. By conference time, the SSA's determined amount of overpayment had been reduced to $70,690.30. *Id.* at 38-39, 42. The plaintiff came into the SSA office on September 29, 2017, stating she wanted to remain her own payee. Even though her counsel informed the SSA representative that the plaintiff needed a payee because she could not read or write, she was found capable of handling her own benefits. *Id.* at 179.

By letter dated October 10, 2017, the SSA informed plaintiff that it would not waive collection of her overpayment because she was not found to be "without fault in causing the overpayment" based on the following:

You worked and earned over the limit for substantial gainful activity (SGA) in

4

> your extended period of eligibility (EPE). This is not the first time you were overpaid for this reason. You came into the Social Security office and told us that you wanted to remain your own payee and that your son would help you with any issues you have. A decision was made, on that day, finding you capable of handling your benefits. Therefore, you are found to be capable of handling all business with Social Security.
> Therefore, based on the facts we have, we cannot waive the collection of this overpayment. This means that you must pay this money back.

*Id.* at 34. The waiver determination at the administration level includes the following:

> Overpayment occurred because the NH worked and earned over the SGA limit in her EPE. In 2008, NH was paid $16684.80 and should have been paid $13904. In 2009, NH was paid $17722.90 and should have been paid $0. In 2010, NH was paid $15653.40 and should have been paid $5916. In 2011, NH was paid $14140.90 and should have been paid $17748. In 2012, NH was paid $15082 and should have been paid $0. In 2013, NH was paid $15094.80 and should have been paid $0. In 2014, NH was paid $15370.80 and should have been paid $0. In 2015, NH was paid $6539.50 and should have been paid $1608. In 2016, NH was paid $0 and should have been paid $8040. In 2017, NH was paid $19941 and should have been paid $17833.

*Id.* at 177. Counsel for the plaintiff appealed the October 10th decision stating, "We appeal both the amount ($70,690.30) of overpayment as determined and we also appeal the denial of . . . [plaintiff's] requested 'hardship waiver.'" *Id.* at 28.

The plaintiff and her counsel appeared at a hearing before the administrative law judge ("ALJ") on August 30, 2018. The plaintiff was the only witness to testify. The ALJ issued an unfavorable decision on November 20, 2018. *Id.* at 14-18. As for the plaintiff's appeal challenging the amount of the overpayment, the ALJ found:

> The claimant has not requested reconsideration of the amount of overpayment and no reconsideration decision on this issue was issued. Therefore, this issue is not before the undersigned in this case. The first claim that the amount of overpayment is in error was not made until November 7, 2017 as part of her request for hearing Exhibit 11, p. 2). Because this request was not made at the lower level and no reconsideration determination was obtained, he undersigned does not have jurisdiction over this issue.

5

*Id.* at 14-15. On the requested waiver issue, the ALJ found that the plaintiff was not without fault:

> As noted in the lower level fault determination, the claimant has been overpaid on multiple occasions due to failure to report work activity (exhibit 5, p.1). Nevertheless, she had requested to remain her own payee and she indicated she was able to obtain assistance with any issues or questions she may have. This does show that she was aware that failure to report work activity could result in an overpayment and that she was the one responsible for reporting her work activity. She still did not report her work activity. Specifically, she had a personal conference in connection with a prior overpayment in September 2010, where she was advised on the reporting requirements (Exhibit 9, p.8). This was followed by three work reviews, which included advising the claimant of her reporting requirements. Despite being repeatedly told in person that she must report her earnings and work activity, and despite receiving all customary notices advising her that she must report her earnings and work activity, she failed to report her earnings. She also failed to provide paystubs when requested.
> Her failure to report her earnings and work activity, or to provide paystubs, is the sole cause of the overpayment, and the claimant is at fault for this failure. The undersigned notes that she argued issues with reading documents due to vision loss. This in no way interferes with her ability to understand the repeated verbal instructions to report her work. In addition, she has been able to work for much of the last decade, despite this complaint, and she told this agency she was able to be her own payee and merely obtain assistance as needed. Therefore, this does not ameliorate her fault in this case.

*Id.* at 17. The Appeals Council denied the plaintiff's request for review. *Id.* at 5.

**STANDARD OF REVIEW**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that the Commissioner's finding "as to any fact, if supported by substantial evidence, shall be conclusive." The court also reviews "whether the correct legal standards were applied." *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010) (internal quotation marks and citation omitted). "It requires more than a

scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citation omitted). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Id.* (internal quotation marks and citation omitted). The review for substantial evidence "must be based upon the record taken as a whole" while keeping in mind "evidence is not substantial if it is overwhelmed by other evidence in the record." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (internal quotation marks and citations omitted). Findings will not be affirmed by isolating facts and labeling them as substantial evidence, for the court must scrutinize the entire record to assess the rationality of the Commissioner's decision. *Graham v. Sullivan*, 794 F. Supp. 1045, 1047 (D. Kan. 1992).

By statute, the Commissioner upon finding that more "than the correct amount of payment has been made to any person" may make a "proper adjustment or recovery . . . under regulations" he prescribes. 42 U.S.C. § 404(a)(1). The same statute continues that, "no adjustment of payments to, or recovery by the United States from, any person who is without fault if such adjustment or recovery would defeat the purpose of this subchapter or would be against equity and good conscience." 42 U.S.C. § 404(b)(1).

**AMOUNT OF OVERPAYMENT**

"The sole statutory grant of district court jurisdiction to review a denial of social security benefits by the Secretary is 42 U.S.C. § 405(g)." *Bartlett v. Schweiker*, 719 F.2d 1059, 1060 (10th Cir. 1983). Section 405(g) provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after

7

a hearing to which he was a party . . . may obtain a review of such decision by civil action . . . ." 42 U.S.C. § 405(g). The Tenth Circuit recently summarized the governing interpretation of § 405(g):

> To obtain a final decision, a claimant must exhaust administrative remedies as provided in the SSA's regulations. *See, e.g., Sims v. Apfel*, 530 U.S. 103, 106-07, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000); *see also* 20 C.F.R. § 404.900(a) (setting out four-step administrative review process required to obtain a final decision for purposes of judicial review); *Weinberger v. Salfi*, 422 U.S. 749, 763-64, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975) (holding existence of a final decision made after a hearing is central to the grant of subject matter jurisdiction under § 405(g) ). Here, it is undisputed Alford did not seek reconsideration or request a hearing before an administrative law judge as required to exhaust his administrative remedies after the Commissioner denied his 2012 applications. He also does not argue that any exception to the exhaustion requirement applies here. *See Heckler v. Ringer*, 466 U.S. 602, 617-619, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984) (discussing exceptions to exhaustion doctrine). Accordingly, the district court lacked jurisdiction to hear a claim challenging these decisions.

*Alford v. Commissioner, SSA*, 767 Fed. Appx. 662, 666 (10th Cir. 2019) (unpub.), *cert. denied sub nom.*, *Alford v. Saul*, 140 S. Ct. 260 (2019). Thus, for the plaintiff here to have a final decision as to the amount of overpayment, she must have exhausted the administrative remedies provided in the SSA's regulations.

The administrative remedies begin with an initial determination by the SSA which can include determining the establishment or termination of a period of disability, terminating benefits, or determining any overpayment of benefits. 20 C.F.R. §§ 404.902(h), (j) and (m). Of the multiple determinations found in the administrative record, the most recent one targeted by the plaintiff's filings is the Notice of Deficiency dated August 31, 2016. It states that the plaintiff is no longer qualified for disability benefits, that she owes an overpayment of $78,730.30, and that she is no longer entitled to Medicare benefits. ECF# 9, p. 59. This notice

8

informed the plaintiff of her appellate rights to file a request for reconsideration. The regulations provide that if a claimant is dissatisfied with the initial determination, "reconsideration is the first step in the administrative review process …, except that we provide the opportunity for a hearing before an administrative law judge as the first step for those situations described in §§ 404.930(a)(6) and (a)(7), where you appeal an initial determination denying your request for waiver of adjustment or recovery of an overpayment (see § 404.506)." 20 C.F.R. § 404.907. The plaintiff who was represented by counsel did not request a hearing before the administrative law judge or argue that one was available. Instead, the plaintiff filed a request for reconsideration along with her counsel's appearance in the proceedings. ECF# 9, pp. 22 and 31.

Before there was a decision on the plaintiff's November reconsideration request, her counsel sent a letter in January of 2017 withdrawing the reconsideration request and submitting "instead" a request for waiver of overpayment. *Id.* at 21. Counsel's letter plainly communicates the plaintiff's intention to end any further administrative review of her objections to the initial determination of August 31, 2016. In short, there has been no reconsidered determination of the August 2016 initial determination based on a review of the preponderance of the evidence. 20 C.F.R. § 404.920. More importantly, by not pursuing the next step in the administrative review process, the plaintiff has lost her right to pursue further administrative and judicial review. The regulation states: "If you are dissatisfied with our decision in the review process, but do not take the next step within the stated period, you will lose your right to further administrative review and your right to

judicial review unless you can show us that there was good cause for your failure to make a timely request for review." 20 C.F.R. § 404.900(b). Therefore, a notice of action, decision or determination "will be considered binding" if the claimant does not proceed with seeking relief at the next stage of the administrative remedies. *Bowen v. City of New York*, 476 U.S. 467, 472 (1986). Simply put, if the claimant fails to complete each step of the administrative remedies, there is no final decision for the purpose of judicial review and the applicant "may not obtain judicial review because [she] has failed to exhaust administrative remedies." *Sims v. Apfel*, 530 U.S. 103, 107 (2000).

The plaintiff cites a regulation governing what issues generally can come before the ALJ. 20 C.F.R. § 404.946. This regulation on issues before the ALJ does not purport to modify or restrict the relevant regulations plainly and directly governing the requirement for exhaustion of administrative remedies. The court has not been presented with any reasonable argument for construing the administrative remedy regulations as subject to the narrow regulation governing issues before the ALJ. The regulation that a claimant loses her right to further administrative review by not pursuing the next administrative remedy is fully applicable and governs here.

The court rejects the argument that the plaintiff by seeking a waiver is also preserving a challenge to the overpayment determination. When a claimant failed to request reconsideration and pursued only a waiver, the Eighth Circuit held:

> Sipp did not exhaust her administrative remedies with respect to her challenge to the overpayment. A request for waiver of overpayment is distinct from a request for reconsideration. See 20 C.F.R. § 404.902(j)-(k). A request for reconsideration is the proper vehicle for a challenge to an overpayment determination. See id. § 404.502a(f), 404.907. Sipp received notice of the overpayment and failed to request reconsideration within sixty days. At the

10

> end of that period, SSA's initial overpayment determination became binding and not subject to judicial review. See id. § 404.905.

*Sipp v. Astrue*, 641 F.3d 975, 980 (8th Cir. 2011). That the ALJ summarily determined or adopted the amount of the overpayment from prior administrative findings does not bypass the administrative exhaustion requirement. The purposes of this requirement are namely, "that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review." *Weinberger v. Salfi*, 422 U.S. 749, 765 (1975); *see Sipp*, 641 F.3d at 980. The ALJ did not exercise administrative review in adopting the overpayment finding, simply because "no reconsideration determination was obtained" by the plaintiff. ECF# 9, at p. 15. The plaintiff does not come forward with arguments for an exception to the exhaustion requirement which are supported by evidence and/or legal authority. The court concludes there is "no judicially reviewable 'final decision'" on the plaintiff's challenge to the amount of the overpayment because she failed to exhaust her administrative remedies. *See Sipp*, 641 F.3d at 981. Thus, the court is unable to consider any of the plaintiff's challenges to the determined amounts of the overpayment.

WAIVER

In addressing situations where recovery of an overpayment may cause undue hardship, the Social Security Act provides, "In any case in which more than the correct amount of payment has been made, there shall be no adjustment of payments to, or recovery by the United States from, any person who is without fault if such adjustment or recovery would defeat the purpose of this subchapter or would be

11

against equity and good conscience." 42 U.S.C.A. § 404(b)(1); *see also* 20 C.F.R. § 404.506. The SSA looks only at whether the person is without fault, because its own fault "does not relieve the overpaid individual or any other individual from whom the Administration seeks to recover the overpayment from liability for repayment if such individual is not without fault." 20 C.F.R. § 404.507. In deciding the individual's fault, the SSA considers "all pertinent circumstances, including the individual's age and intelligence, and any physical, mental, educational, or linguistic limitations (including any lack of facility with the English language) the individual has." *Id*. Fault occurs when:

> the facts show that the incorrect payment . . . resulted from:
> (a) An incorrect statement made by the individual which he knew or should have known to be incorrect; or
> (b) Failure to furnish information which he knew or should have known to be material; or
> (c) With respect to the overpaid individual only, acceptance of a payment which he either knew or could have been expected to know was incorrect.

20 C.F.R. § 404.507.

Critical to the arguments here is the rule that the overpaid beneficiary bears the burden of demonstrating she is without fault in receiving the overpayment of benefits. *Sipp v. Astrue*, 641 F.3d 975, 981 (8th Cir. 2011); *Romero v. Harris*, 675 F.2d 1100, 1103 (10th Cir. 1982). The plaintiff argues substantial evidence does not support the ALJ's finding that she was at fault in failing to bring in her pay stubs. The ALJ found that the plaintiff knew she was responsible for reporting work activity and failed to do so. He supported that finding based upon the multiple times that the plaintiff had been subject to prior overpayment determinations for failure to report activity, that the plaintiff had represented to the SSA she should remain her payee

12

and she could seek assistance from others if she needed it, that she had been advised of her reporting duties at the personal conference on overpayments in September of 2010, that she was advised of the reporting requirements at three subsequent work reviews, and that she failed to provide paystubs when requested. As for the plaintiff's asserted problems with reading documents due to vision loss, the ALJ found that this did not "ameliorate her fault" because the plaintiff had received verbal instructions, had been able to work for the last ten years, and had told the SSA she could function as her own payee.

The plaintiff rightly challenges several of the ALJ's findings as unsupported by any cited evidence. For example, the ALJ's findings about what was said during the "in-person" contacts with the plaintiff do not appear to be based on evidence from records about those contacts or from witnesses to them. The plaintiff argues the SSA report cited by the ALJ only assumes such information was discussed. The plaintiff's other significant argument is that the ALJ should have set forth clear reasons and findings for not accepting plaintiff's testimony on her lack of "fault." The context of this case does make the plaintiff's testimony and her credibility certainly relevant considerations on fault. *See Martinez v. Astrue*, 2012 WL 1045230, at *8 (D. Colo. Mar. 28, 2012). Notwithstanding these challenges, the court is satisfied that the Commissioner's "fault" determination here must be upheld because it is supported by substantial evidence in the record.

The record is replete with the prior administrative determinations of overpayment due to the plaintiff's failure to report work activity. The plaintiff's own testimony about these earlier overpayment proceedings and the personal conferences

is substantial evidence she knew she was required to bring in her paystubs. The substantial nature of that evidence is not disturbed by the plaintiff's testimony that she was not verbally instructed of a continuing duty to bring in paystubs. Indeed, this latter testimony seems too fine a point against the testimony and evidence of her repeated participation in these overpayment proceedings and the numerous notices sent concerning prior overpayments. The plaintiff's earlier overpayment proceedings involved not only significant amounts but also significant periods of stopped or reduced disability payments. She testified to personally taking in her pay stubs as part of her required participation in these overpayment proceedings. There is nothing in the record to suggest the plaintiff suffers from any mental impairment that would preclude her from understanding how failing to perform her duty to provide paystubs could result in significant overpayments.

There also is substantial evidence supporting the ALJ's determination that the plaintiff's difficulty in reading SSA communications did not ameliorate her fault. Even after incurring these significant overpayments, the plaintiff represented to the SSA that she could handle receiving her disability payments and dealing with all other related SSA communications by seeking assistance when needed. This acknowledgment that she could and would seek help from others certainly does not square with the plaintiff's denial of fault because she could not understand and follow the SSA notices and requirements concerning overpayments. For that matter, the ALJ reasonably could infer some capacity for reading from the plaintiff's ability to hold down part-time work in a retail store for ten years.

14

Finally, the plaintiff's testimony and the administrative record can reasonably be understood as showing the plaintiff taking some action on SSA notices, seeking assistance in dealing with them, and following through with her reporting duties when her disability payments stopped or when the overpayments became so significant as to grab her attention. This is not to say that the plaintiff's testimony could not be read and understood another way. But the possibility of drawing different conclusions from the plaintiff's testimony does not prevent the administrative agency's findings here from being supported by the substantial evidence found in the record.

IT IS THEREFORE ORDERED that the judgment be entered in accordance with sentence four of 42 U.S.C. § 405(g) affirming the Commissioner's final decision.

Dated this 18th day of December, 2019, Topeka, Kansas.

s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge